IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Clyde J. Burris, | ) | Civil Action No. 8:10-cv-94-JDA |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to jurisdiction by a magistrate judge; and the Honorable R. Bryan Harwell's February 9, 2010 Order of reference. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, the decision of the Commissioner is reversed and remanded for administrative action consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).[1]

---

[1] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

Plaintiff initially filed DIB and SSI claims in September 2002, alleging disability as of March 22, 2001. [R. 124; *see also* R. 142]. His claims were denied initially based on a finding that he had engaged in substantial gainful activity. [R. 79; *see* R. 142.] Plaintiff's claims were re-opened in November 2006 [R. 164; *see* R. 127, 130] and were denied again [R. 74, 76, 89–95]. Plaintiff filed a request for hearing, and on October 28, 2008, Administrative Law Judge ("ALJ") Gregory Hamel held a hearing on Plaintiff's claims. [R. 23–73.]

On December 15, 2008, the ALJ issued his decision that Plaintiff was not disabled under §§ 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act ("the Act"). [R. 1–13.] Following his review of the evidence, the ALJ found Plaintiff had the following severe impairments: lumbar disc disease; status post lumbar discectomy and fusion; and schizophrenia. [R. 6, Finding 3.] However, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (part A). [R. 7, Finding 4.] The ALJ also found Plaintiff retained the residual functional capacity to perform the full range of sedentary work and a partial range of light work because Plaintiff could not stand or walk for more than a total of four hours during the work day; the ALJ limited Plaintiff to unskilled work that does not require detailed or complex tasks and to work that does not require more than occasional contact with the public. [R. 8, Finding 5.] With these restrictions, the ALJ found Plaintiff was unable to perform any past relevant work [R. 11,

Finding 6], but jobs existed in significant numbers in the national economy Plaintiff could perform [R. 11, Finding 10].

On November 18, 2009, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the hearing decision.  [R. 14–17; 20 C.F.R. §§ 404.98, 416.1481.]  Plaintiff filed this action for judicial review on January 14, 2010.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred (1) by failing to consider all relevant evidence of record in determining whether Plaintiff is disabled; (2) in assessing Plaintiff's residual functional capacity; (3) in weighing the opinions of Plaintiff's treating physicians regarding the nature and severity of Plaintiff's impairments; (4) in relying solely on the grids when Plaintiff suffers from significant non-exertional limitations; and (5) by failing to provide a decision supported by "competent substantial evidence."  [Doc. 18.]

The Commissioner contends the ALJ (1) reasonably discounted the opinions of Plaintiff's neurosurgeon and psychiatrist because the opinions were unsupported and (2) correctly relied on the grids because Plaintiff's nonexertional limitations did not significantly erode the occupational base.  [Doc. 19.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to

3

support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "'allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ),'" not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient

reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176,

1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

6

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[2]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[2]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g., Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

I.    **The Five Step Evaluation**

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  20 C.F.R. §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  See 20 C.F.R. §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the

9

combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[3] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g),

---

[3]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. § 404.1545(e)

416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all

---

[4]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III. Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of

examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(e), 416.927(e).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,

14

723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig,* 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id*. (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:

15

...

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

Although Plaintiff separates his arguments into five points, the Court finds Plaintiff makes only two arguments: 1) the ALJ erred in weighing the opinions of Plaintiff's treating physicians, and 2) the ALJ erred by relying exclusively on the grids at step five of the sequential analysis.[5] The Court addresses these two arguments in turn.

**Weight Assigned to Treating Physician Opinions**

Plaintiff contends the ALJ improperly weighed the opinions of Ira Rosenshein, M.D., and George Khoury, M.D., two of Plaintiff's treating physicians.

The responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. *See Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d

---

[5] As outlined above, Plaintiff contends the ALJ erred (1) by failing to consider all relevant evidence of record in determining whether Plaintiff is disabled; (2) in assessing Plaintiff's residual functional capacity; (3) in weighing the opinions of Plaintiff's treating physicians regarding the nature and severity of Plaintiff's impairments; (4) in relying solely on the grids when Plaintiff suffers from significant non-exertional limitations; and (5) by failing to provide a decision supported by "competent substantial evidence." Plaintiff's first, second, and fifth arguments are general arguments, while Plaintiff's third and fourth arguments are specific allegations of error. Accordingly, the Court has considered Plaintiff's first, second, and fifth arguments in addressing Plaintiff's specific allegations of error.

at 520.  While the opinion of a claimant's treating physician generally is given great weight, *Coffman*, 829 F.2d at 517, the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590; *see also Coffman*, 829 F.2d at 517 (stating that a treating physician's opinion may be disregarded only if there is persuasive contradictory evidence in the record).  Further, the ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity.  20 C.F.R. § 1527(e).  However, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record a whole; (5) the specialization of the physician; and (6) other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).

### Dr. Rosenshein

Plaintiff contends the ALJ erred by failing to give controlling weight to Dr. Rosenshein's opinion.  The ALJ expressly considered Dr. Rosenshein's opinion, but did "not give his opinion substantial weight" because no treatment records supported the severe limitations Dr. Rosenshein recited in his September 2008 opinion.  [R. 10.] Plaintiff argues there are no inconsistencies between Dr. Rosenshein's records and opinion.

18

However, the Court finds the ALJ's decision to discount Dr. Rosenshein's opinion is supported by substantial evidence.

### Dr. Rosenshein's Opinion

On September 11, 2008, Dr. Rosenshein—who was not Plaintiff's treating psychiatrist at that time—completed a "Medical Statement Concerning Schizophrenia for Social Security Disability Claim" form on Plaintiff's behalf. [R. 495–97.] On this form, Dr. Rosenshein indicated Plaintiff experienced marked restriction of activities of daily living and marked difficulty in maintaining social functioning. [R. 495.] Dr. Rosenshein also indicated Plaintiff experienced deficiencies in concentration, persistence, or pace, resulting in frequent failure to complete tasks in a timely manner, and repeated episodes of deterioration or decompensation in work or work-like settings and that cause the patient to withdraw from the precipitating situation or exacerbate symptoms.[6] [*Id.*] As to Plaintiff's mental functioning, Dr. Rosenshein opined Plaintiff was markedly impaired or extremely impaired in eleven of twenty criteria. [R. 496–97.] Notably, Dr. Rosenshein warned

---

[6]At Step 2 of the five-step evaluation process, the ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments. 20 C.F.R. § 404.1520a(a). Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to determine if the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b)(1). Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment. *Id.* § 404.1520a(b)(2). The rating determines whether the claimant's impairment is severe or not severe. *Id.* § 404.1520a(d).

To rate a claimant's degree of functional limitation, the ALJ considers four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C. To arrive at a rating, the ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id.* § 404.1520a(c)(2); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). For the fourth functional area—episodes of decompensation—the ALJ uses a four-point scale: none, one or two, three, and four or more. *Id.* If the ALJ rates the claimant's degree of limitation as none or mild in the first three functional areas and none in the fourth functional area, the ALJ will usually conclude the claimant's impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *Id.* § 404.1520a(d)(1).

Plaintiff has a history of substance abuse, "which is [a] confounding factor" in Dr. Rosenshein's schizophrenia diagnosis. [R. 495.] At the end of the form, Dr. Rosenshein commented, "Please understand I have not seen [Plaintiff] in ~ 9 months." [R. 497.]

*Treating Psychiatrists' Records*

Plaintiff alleged no mental impairments in his disability report [R. 172–79] and did not begin seeing Dr. Rosenshein until late in the relevant period [*see* R. 506–13]. When Plaintiff began seeing Dr. Rosenshein in the summer of 2007, Dr. Rosenshein completed an "Initial Clinical Assessment," which states Plaintiff had been addicted to cocaine, but Plaintiff had been sober since he underwent six days of treatment in May 2007. [R. 506.] Dr. Rosenshein concluded Plaintiff had "a lot of confounding factors due t[o] sub[stance] abuse," finding Plaintiff was both cocaine and alcohol dependent. [R. 509.] Dr. Rosenshein assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 60, indicating [m]oderate symptoms.[7] [*Id.*]

After his initial appointment, Plaintiff continued to see Dr. Rosenshein approximately once per month through January 2008. [*See* R. 510–13.] On October 4, 2007, Dr. Rosenshein noted Plaintiff's alcohol abuse. [R. 512.] On November 20, 2007, Dr. Rosenshein observed Plaintiff was doing well, with some insight; Dr. Rosenshein assessed Plaintiff's insight and judgment as "good" and described Plaintiff as "goal directed." [*Id.*]

There is no record of further mental health treatment until two months before Plaintiff's hearing. At that time, Dr. Rosenshein had left private practice, and he referred

---

[7] GAF ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 34 (emphasis omittted).

20

Plaintiff to psychiatrist Samuel Rosen.  [R. 499–500.]  At his initial appointment in August 2008, Plaintiff told Dr. Rosen he had never been hospitalized for his mental impairment, and he had not seen any psychiatrist other than Dr. Rosenshein.  [R. 499.]  Plaintiff explained he had been having audio hallucinations "for more than ten years perhaps even as many as twenty years," but he had "simply dealt with them."  [*Id.*]

In spite of his symptoms, Plaintiff reported he had "not acted out in such a way as to cause him further difficulties."  [*Id.*]  Dr. Rosen added that Plaintiff's "appetite, energy, concentration, interest and so on are reasonably stable."  [*Id.*]  Dr. Rosen further noted Plaintiff was not hypomanic and had not had panic or anxiety attacks.  [*Id.*]  Plaintiff said that he had not taken the medication as prescribed by Dr. Rosenshein for his illness.  [*Id.*]  He told Dr. Rosen that he worked in a bowling alley two days a week, tending the vending machines.  [R. 500.]  Dr. Rosen noted Plaintiff had "rather major problems with his sleep," and Plaintiff's "[i]nsight and judgment are partially impaired probably."  [*Id.*]

*Analysis*

"The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion."  20 C.F.R. § 404.1527(d)(3); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (providing that "significantly less" than controlling weight be accorded a physician's opinion if it is "not supported by clinical evidence").  Here, substantial evidence supports the ALJ's conclusion that the severe limitations imposed by Dr. Rosenshein are not supported by Plaintiff's treatment records.

First, while Dr. Rosenshein opined in September 2008 that Plaintiff had "marked" difficulties in several areas, Dr. Rosenshein's treatment notes reflect that at most, Plaintiff had moderate difficulties.  [*Compare* R. 495–97 (opining Plaintiff has marked difficulties), *with* R. 509 (assessing a GAF score of 60).]  Second, Plaintiff continued to work for several years after the alleged onset of his mental impairment [*see* R. 499], and "evidence showing that a claimant has worked despite a long standing impairment may be substantial evidence that the impairment is not disabling," *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987).  Third, Dr. Rosenshein repeatedly noted that any assessment of Plaintiff's mental impairment was complicated by Plaintiff's substance abuse.  [R. 495, 509, 512.] Finally, Dr. Rosenshein delivered the contested opinion approximately nine months after he last saw Plaintiff, which Dr. Rosenshein indicated should be taken into account when assessing his opinion.  [*See* R. 497.]

Plaintiff failed to direct the Court to any evidence the ALJ failed to consider in weighing Dr. Rosenshein's opinion or to any evidence that would support Dr. Rosenshein's opinion.  Therefore, based on the above, the Court finds substantial evidence supports the ALJ's decision to discount Dr. Rosenshein's opinion.

### Dr. Khoury

Plaintiff points out three opinions that Dr. Khoury provided on Plaintiff's behalf:  (i) a letter dated August 6, 2002, which stated that Plaintiff was "totally disabled at this time" [R. 237]; (ii) a "Spinal Nerve Root Compression" form, dated April 5, 2004, in which the doctor opined that Plaintiff's lumbar disk disease equaled Listing 1.04A [R. 454–55]; and

22

(iii) a "Physical Capacities Evaluation/Questionnaire" dated May 10, 2004[8] in which Dr. Khoury stated that Plaintiff could perform sitting, standing, and walking for a combined five hours in an eight-hour workday; could never lift over ten pounds; would need to lie down for one to two hours, twice a day; and could *never* climb, bend, squat, stoop, kneel, crawl, or twist side to side [R. 451–53]. The ALJ specifically addressed Dr. Khoury's August 2002 letter opining that Plaintiff was "totally disabled" and gave it "little weight since [Plaintiff] worked for almost three years after the note from Dr. Khoury was written." [R. 10.] The ALJ also addressed Dr. Khoury's September 2008 treatment notes. [*Id.*] However, the ALJ failed to address the April 2004 Spinal Nerve Root Compression form and the May 2004 Physical Capacities Evaluation/ Questionnaire. [*See* R. 8–11.]

As stated above, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza*, 219 F.3d at 393, and the regulations require the ALJ to consider and address medical source opinions, SSR 96-9p, 61 Fed. Reg. 34,474, at 34,478 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1545(a)(1), 404.1527(b). Although opinions that a claimant is disabled, meets the listing requirements, or similar assertions are not medical opinions but, rather, administrative findings reserved for the Commissioner's determination, SSR 96-5p, 61 Fed. Reg. 34471-01, at 34,474 (July 2, 1996), the ALJ must consider such opinions, even though the ALJ accords no special significance to their source because the final responsibility for deciding these issues is reserved to the Commissioner, 20 C.F.R. § 404.1527(e)(2), (e)(3). Accordingly,

---

[8]In October 2008, Dr. Khoury provided an opinion in reference to Plaintiff's pending disability claim; Dr. Khoury opined the functional limitations outlined in his May 10, 2004 form were still applicable based on his examination of Plaintiff on September 9, 2008. [R. 503–04.] The examination actually took place on September 8, 2008, and the notes from that exam indicate "[a]pparently, [Plaintiff] has gone for disability. His exam shows a well-healed wound. There are no deficits." [R. 493.]

23

the Court finds the ALJ's failure to assign a weight to these opinions was error, and upon remand, the ALJ should revisit and properly weigh Dr. Khoury's opinions.[9]

**Exclusive Reliance on the Grids**

Plaintiff contends the ALJ committed reversible error by using the grids to satisfy the step five burden because in limiting Plaintiff's public interaction at step four, "the ALJ implicitly found that [Plaintiff's] nonexertional mental impairments significantly erode his occupational base."[10] [Doc. 18 at 20.] Plaintiff contends that, because his occupational base was eroded by a mental limitation, the ALJ was required to call a vocational expert. The Court agrees.

The ALJ found Plaintiff had the nonexertional limitations of an inability to perform "detailed or complex tasks or work requiring more than occasional contact with the public." [R. 8.] Accordingly, at step five, the ALJ used the grids as a framework and found Plaintiff

---

[9] Because the Court is remanding this case based on the ALJ's improper reliance on the grids as explained below, the Court does not address whether the ALJ's failure to assign a weight to Dr. Khoury's April 2004 and May 2004 opinions was harmless error but directs the ALJ to assign a weight to these opinions when reviewing the case on remand. The Court notes that the ALJ is obligated to weigh medical opinions, *see Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527), and the ALJ must assign a weight to a medical opinion based on the factors listed in 20 C.F.R. § 404.1527(d) even if the ALJ discounts the opinion because it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590. Further, the ALJ should revisit, as appropriate, any part of his opinion affected by the weight assigned to Dr. Khoury's opinion, such as the residual functional capacity assessment, which Plaintiff contends was improper because the ALJ failed to properly weigh Dr. Khoury's opinions.

Moreover, the Commissioner contends that the ALJ implicitly gave little weight to Dr. Khoury's later opinions because the ALJ gave little weight to the August 2002 opinion. [Doc. 19 at 10 ("In his decision, the ALJ gave little weight to Dr. Khoury's August 2002 opinion (and thus, implicitly gave little weight the latter opinions) . . . .").] However, "principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ. That is why the ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to her conclusion.'" *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citations omitted). Therefore, the Court declines to address whether the ALJ's decision with respect to Dr. Khoury's opinion is supported by substantial evidence because the ALJ did not fully articulate the grounds for his decision with respect to Dr. Khoury's opinion.

[10] Plaintiff adds that this limitation "contributed to the finding that Plaintiff is no longer capable of performing his past relevant work" [Doc. 18 at 20], but he is mistaken. At step three, the ALJ limited Plaintiff to light work [R. 8, Finding 5], and at step four, the ALJ clearly explained that Plaintiff's past jobs "required heavy exertion; therefore, the claimant is unable to perform past relevant work" [R. 11].

24

disabled under Rules 202.21 and 201.28. [R. 12.] The ALJ explained SSR 85-15 "provides that unskilled jobs ordinarily involve working primarily with objects, rather than with data or people. Therefore, the ALJ determined the Plaintiff's limitation to unskilled jobs that do involve occasional contact with the public is found to not significantly erode the light, unskilled occupational base." [R. 12 (citing SSR 85-15, 1985 WL 56857 (1985).]

In relying on SSR 85-15, however, the ALJ ignored the further description of unskilled work in SSR 85-15, which indicates that "[t]he basic mental demands of competitive, remunerative, unskilled work include[s] the abilit[y] (on a sustained basis) . . . to respond appropriately to supervision, coworkers and usual work situations." SSR 85-15, 1985 WL 56857, at *4. Therefore, the ALJ's finding that Plaintiff's on-the-job social interaction should be limited directly conflicts with the basic demands of unskilled work. Consequently, in relying exclusively on the grids, the ALJ failed to address the impact of Plaintiff's nonexertional limitation on the jobs available that Plaintiff could perform.

The Court finds persuasive the reasoning in *Bonds v. Astrue*, No. 6:07-1135, 2008 WL 2952446 (D.S.C. July 29, 2008) (adopting the report and recommendation after no objections were filed). In *Bonds*, the ALJ found the claimant was limited to unskilled work due to mild to moderate concentration deficits from pain, and the ALJ ultimately concluded the grids directed a finding of not disabled. 2008 WL 2952446, at *11. On review in the district court, the claimant contended the ALJ erred by relying on the grids to deny his claim and argued that, because the claimant suffered from a significant nonexertional impairment, the ALJ should have obtained expert vocational testimony to prove a significant number of jobs existed in the national economy that the claimant could perform. *Id.* In response, the Commissioner argued the claimant's nonexertional limitation of being

25

limited to unskilled work is incorporated into the grids, and therefore, the ALJ was correct

to rely exclusively on the grids in making his disability determination. *Id.* The magistrate

judge disagreed, *id.*, and in adopting the magistrate's recommendation, the district court

directed the ALJ to obtain vocational expert testimony if on remand the ALJ reached step

five, *id.* at 2. The magistrate judge noted the following rationale from the Northern District

of Texas:

> The ALJ further found this nonexertional impairment limited
> plaintiff to unskilled jobs. In making this determination, the
> ALJ, in effect, became a vocational expert. Whether plaintiff's
> moderate impairment in the area of concentration, persistence
> and pace limited plaintiff to one and two step jobs and whether
> such eroded the occupational base and to what degree it was
> eroded was a determination for a vocational expert. While the
> ALJ may be correct that jobs calling for simple and/or one to
> two step instructions may be unskilled sedentary jobs, such
> jobs also require an individual to perform repetitive tasks over
> an eight-hour work day. Plaintiff's nonexertional impairment of
> moderate limitation in the area of concentration, persistence
> and pace could directly affect plaintiff's ability to remain
> attentive and concentrate. This could directly affect plaintiff's
> ability to perform simple sedentary work, such as assembly line
> work, unskilled in nature, which the ALJ found plaintiff capable
> of performing. It may be that a vocational expert can identify
> unskilled sedentary jobs which would not be affected by
> plaintiff's nonexertional limitations. It may also be that a
> vocational expert would find limitations in the area of
> concentration, persistence and pace, would affect such jobs
> and further erode the number of unskilled sedentary jobs
> available. Reversal and remand is required so a vocational
> expert can be called and can address the issue.

*Id.* at *11 (quoting *Chapa v. Astrue*, No. 2:05-cv-0253, 2008 WL 952947 (N.D. Tex. Apr.

8, 2008)).

Here, because the ALJ found Plaintiff to have severe mental impairments, resulting

in mild limitations in daily activities, moderate limitations in social functioning, and mild

limitations in concentration [R. 11], and Plaintiff's mental impairments limited him to unskilled work, the ALJ was required to use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a (2001); *see Walker*, 889 F.2d at 49–50. As a result, the ALJ improperly took on the role of the vocational expert by relying exclusively on the grids because when a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines, *Gory*, 712 F.2d at 931. Therefore, the Court finds the ALJ erred by relying solely on the grids after determining that Plaintiff suffered from severe non-exertional impairments and remands the case to receive testimony from a vocational expert as to whether jobs are available Plaintiff could perform.

## CONCLUSION

Wherefore, based upon the foregoing, it is ordered that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be REMANDED to the Commissioner for further administrative action consistent with this order.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 31, 2011
Greenville, South Carolina